BABLER BROS., INC., an Oregon corporation; Oregon–Columbia Chapter of the Associated General Contractors of America, Inc., an Oregon non-profit corporation, Plaintiffs–Appellants,

v.

Mary Wendy ROBERTS, in her official capacity as Commissioner of the Bureau of Labor and Industries; Donald E. Forbes, Director of the Oregon Department of Transportation, Defendants–Appellees.

DYAD CONSTRUCTION, INC.,
Plaintiff–Appellant,

v.

CITY OF PORTLAND; State of Oregon–Bureau of Labor & Industry; Mary Wendy Roberts, in her official capacity as Commissioner of the Bureau of Labor and Industries; Department of Labor, Defendants–Appellees.

Nos. 91–35566, 91–35807 and 36003.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 8, 1992.

Decided June 9, 1993.

Thomas W. Sondag, Lane, Powell, Spears, Lubersky, Portland, OR, for plaintiffs-appellants.

Michael J. Gentry, Tooze, Shenker, Holloway & Duden, Portland, OR, for plaintiff-appellant.

Richard D. Wasserman, Asst. Atty. Gen., Salem, OR, for defendants-appellees.

Before: FEINBERG,* GOODWIN, and SCHROEDER, Circuit Judges.

SCHROEDER, Circuit Judge:

Both Babler Brothers and Dyad Construction filed suit in the District of Oregon to challenge the enforceability of an Oregon statute that requires contractors on public projects to pay time and a half for all hours worked in excess of eight hours per day unless the workers are covered by the terms of a collective bargaining agreement. Or. Rev.Stat. § 279.334 (1991). Appellants, both non-union contractors, allege that the statute is preempted by the National Labor Relations Act ("NLRA"), 29 U.S.C. §§ 151 *et seq.*, and violates equal protection by regulating only non-union contractors.

After a bench trial, the district court ruled against Babler Brothers in its suit against Mary Wendy Roberts, the Commissioner of

---

* Honorable Wilfred Feinberg, Senior United States Circuit Judge for the Second Circuit, sitting by designation.

the Bureau of Labor and Industries for the State of Oregon, who is responsible for enforcement of the statute, and Donald E. Forbes, the Director of the Oregon Department of Transportation ("ODOT"). *Babler Bros., Inc. v. Roberts,* 761 F.Supp. 97 (D.Or. 1991). The district court, following *Babler Bros.,* later granted defendants' motion to dismiss the suit of Dyad Construction against the City of Portland and Mary Roberts. *Dyad Constr., Inc. v. City of Portland,* 765 F.Supp. 653 (D.Or.1991). Both Babler Brothers and Dyad Construction appealed to this court. We consolidated the cases for decision because the legal questions to be resolved in each case are identical. We affirm the district court in each case because we rule that the Oregon statute is not preempted by the NLRA. We also affirm the district court's ruling that the statute does not violate equal protection.

The Oregon statute at issue, Or.Rev.Stat. § 279.334, requires non-union employers, but not union employers, to pay overtime (time and a half) for any hours worked over an eight hour day.[1] It applies to work performed on state and local government construction projects. Sections (1) and (2) set forth the overtime and holiday provisions. Section (3) of the statute, the result of a 1981 amendment, prevents the application of the statute to work under collective bargaining agreements. Section (3) became effective on an emergency basis on July 2, 1981. Its history reflects that the exception was enacted because collective bargaining agreements at the time did not recognize the same holiday schedule as that set forth in sections (1) and (2) and the state did not wish to interfere with collectively bargained schedules.

Appellants argue that the statute is now used to discriminate against their performance of public contracts, which require appellants to remove workers from highways between 3:00 P.M. Fridays and midnight Sundays or legal holidays. Because of these restrictions on highway work hours, appellants favor a four-day a week, ten-hour a day schedule ("4–10"). Because their employees must travel to different work sites, appellants claim that their employees also favor such a schedule, which allows them time at home. Appellants argue that the application of the statute places them at a competitive disadvantage with union employers, because the requirement to pay overtime after eight hours results in a ten percent surcharge on non-union employers.

When Babler informed ODOT that it intended to utilize the 4–10 schedule without paying overtime, ODOT responded that it would withhold money from Babler, pay the money directly to Babler employees, find Babler in breach of contract, and disqualify Babler from public work contracts for up to three years. When Dyad actually refused to pay overtime to its 4–10 workers, the City of Portland withheld payments from Dyad.

Appellants contended in the district court that this statute is preempted both because federal law has occupied the field of collective bargaining (*Garmon* preemption) and also because Congress intended to leave this area unregulated (*Machinists* preemption). *See San Diego Bldg. Trades Council v. Garmon,* 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959); *Machinists v. Wisconsin Employment Relations Comm'n,* 427 U.S. 132, 96 S.Ct. 2548, 49 L.Ed.2d 396 (1976). The district court rejected these arguments, ruling that there was no clear and manifest intent

---

**1.** *The statute provides, in relevant part:*

(1) In all cases where labor is employed by the state, county, school district, municipality, municipal corporation, or subdivision, through a contractor, no person shall be required or permitted to labor more than eight hours in any one day, or 40 hours in any one week, except in cases of necessity, emergency, or where the public policy absolutely requires it, in which event, the person or persons so employed for excessive hours shall receive at least time and a half pay for all overtime in excess of eight hours a day, and for work performed on Saturday and on the following legal holidays: [Sunday, New Years

Day, Memorial Day, Independence Day, Labor Day, Thanksgiving Day and Christmas Day].

(2) For the purpose of this section, each time a holiday, other than Sunday, listed in subsection (1) of this section falls on Sunday, the succeeding Monday shall be recognized as a legal holiday. Each time a holiday listed in subsection (1) of this section falls on Saturday, the preceding Friday shall be recognized as a legal holiday.

(3) Subsections (1) and (2) of the section do not apply to a contract for a public improvement if the contractor is a party to a collective bargaining agreement in effect with any labor organization. O.R.S. 279.334.

by Congress in the NLRA to preempt Oregon from regulating the working conditions of individual employees.

Appellants make the same arguments on appeal. First, they argue that under *Garmon* the Oregon statute encroaches upon the collective bargaining process because it penalizes non-union employers and favors non-union employees. Although they acknowledge that the statute neither dictates terms of agreements nor regulates collective bargaining activity, appellants contend that it is an unfair intervention by the State of Oregon into the collective bargaining process itself because the law does not apply to union and non-union members equally.

Second, appellants argue that this statute is not a law of general application because it is not a minimum wage regulation under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* According to appellants, the statute regulates a field Congress intended to leave to market forces, and is not an exercise of the state's prerogative to regulate wages and working conditions for all individuals. Appellants argue that the statute therefore fails the tests the Supreme Court applied in *Metropolitan Life Ins. Co. v. Massachusetts,* 471 U.S. 724, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985), and *Fort Halifax Packing Co. v. Coyne,* 482 U.S. 1, 107 S.Ct. 2211, 96 L.Ed.2d 1 (1987), to determine when state regulation survives *Machinists* preemption. *See also Bechtel Constr., Inc. v. United Bhd. of Carpenters and Joiners,* 812 F.2d 1220 (9th Cir. 1987).

■ The federal government retains exclusive power over certain areas of labor law committed to it by Congress under the NLRA. When state laws conflict with federal law in these areas, federal law preempts the state law. While the Supreme Court has recognized two types of preemption, *Garmon* preemption and *Machinists* preemption, there remain many areas in which states may appropriately intercede in the relationships between employees and employers. The scope of federal preemption is continually evolving. The most recent Supreme Court discussion of these areas of labor law is *Building & Constr. Trades Council v. Associated Builders & Contractors, Inc.,* —— U.S. ——, 113 S.Ct. 1190, 122 L.Ed.2d 565 (1993) (*"Associated Builders"*). In that case, the Court held that there was no preemption, under either *Garmon* or *Machinists,* of a state's requirement that all contractors on a state construction project be bound by the terms of a collective bargaining agreement. This decision provides special guidance for us in deciding the issues in this case.

■ We discuss first the appellants' contentions with respect to *Garmon* preemption. *Garmon* preemption protects the primary jurisdiction of the National Labor Relations Board ("NLRB") by preempting state regulation of conduct that is actually or arguably protected or prohibited by the NLRA. *See Garmon, supra.* A statute falls within the scope of *Garmon* preemption when the statute's terms encompass matters within either the provisions of section 7 or section 8 of the NLRA.

Section 7 of the NLRA protects the rights of employees in collective bargaining, including their right to strike, their right to picket, and their right to join or not to join a union. In this case, the rights of employees to bargain collectively with employers are not affected under the Oregon statute. The Oregon employees remain free to bargain with employers, and to join or not to join a union.

Section 8 of the NLRA regulates unfair labor practices. In general, section 8 prohibits employers and labor organizations from interfering with the employee rights protected under section 7 of the Act. Section 8(a) prohibits unfair conduct by employers toward employees, including, for example, discrimination between union and non-union members. Section 8(b) of the Act regulates unfair labor practices by labor organizations. Unfair labor practices such as threats against employees, spying on employees, and discrimination between union and non-union members are prohibited by the requirements of sections 8(a) and (b).

Appellants argue that sections 8(a)(3) and 8(b)(2) of the Act prohibit the type of discrimination against non-union employees that the Oregon statute mandates. Under section 8(a)(3), an employer is not allowed to discriminate among employees on terms of em-

ployment. Under section 8(b)(2), a union is not allowed to condition employee benefits on union membership, or to cause an employer to discriminate.

■ At first blush, there is some plausibility to appellants' argument that the statute discriminates between union and non-union employees and so violates these sections of the NLRA. However, sections 7 and 8 govern conduct within the collective bargaining framework. They regulate employers' and unions' dealings with employees about union membership and collective bargaining. In this case, the statute does not bring about employer or labor organization coercion that is illegal under the provisions of the Act. Nor is there interference in collective bargaining by employees. *See M.W. Kellogg Constructors v. NLRB,* 806 F.2d 1435 (9th Cir.1986) (union and employer made overtime and layoff decisions affecting union and non-union employees unequally; these fall within the unfair labor practices of 8(a)(3) and 8(b)(2)). Neither Babler nor Dyad is discriminating between union and non-union employees. Because the statute at issue here does not deal with conduct that the NLRA even arguably protects or prohibits, there is no *Garmon* preemption. *See Associated Builders,* —— U.S. at ——, 113 S.Ct. at 1194.

■ The second category of preemption identified by the Supreme Court, *Machinists* preemption, is based on the principle that the states should not regulate conduct that Congress has chosen to leave unregulated. In *Machinists,* an employer filed a complaint with the Wisconsin Employment Relations Commission, charging that a union's refusal to work overtime was an unfair labor practice under Wisconsin state law. The Supreme Court ruled that such conduct is not subject to state regulation, because in certain areas "Congress meant to leave some activities unregulated and to be controlled by the free play of economic forces." *Machinists,* 427 U.S. at 145, 96 S.Ct. at 2555. Thus in *Golden State Transit Corp. v. City of Los Angeles,* 475 U.S. 608, 106 S.Ct. 1395, 89 L.Ed.2d 616 (1986), the Court held that a municipality could not try to force a settlement of a labor dispute between taxi drivers and their employers by withholding renewal of operators' licenses. State laws must not "upset the balance of power between labor and management expressed in our national labor policy." *Machinists,* 427 U.S. at 146, 96 S.Ct. at 2556 (quoting *Garner v. Teamsters, Chauffeurs & Helpers Local Union,* 346 U.S. 485, 500, 74 S.Ct. 161, 171, 98 L.Ed. 228 (1953)).

When states have enacted statutes intended to provide minimum benefits to employees and not intended to interfere with the bargaining position of the parties, the Supreme Court has upheld state benefit statutes against *Machinists* preemption challenges. *See Metropolitan Life, supra* and *Fort Halifax, supra; see also New York Tel. Co. v. New York State Dep't. of Labor,* 440 U.S. 519, 99 S.Ct. 1328, 59 L.Ed.2d 553 (1979).

In *Metropolitan Life,* the Supreme Court upheld a Massachusetts minimum health care benefits policy. The insurance company argued that the minimum standards imposed a term on employers in collective bargaining agreements. The Court rejected that argument, holding that the statute's minimal substantive requirements were not incompatible with federal labor law. The health care policy did not upset the balance of power between labor and management, or undermine the equality of the parties. *Id.,* 471 U.S. at 753, 105 S.Ct. at 2396. In *Fort Halifax,* the Court upheld a Maine law that required employers to provide severance pay to employees unless "the employee is covered by an express contract providing for severance pay." *Fort Halifax,* 482 U.S. at 22, 107 S.Ct. at 2223. The Court reasoned that the statute did not interfere with collective bargaining. The same is true here. The statute does not apply if there is a collective bargaining agreement.

The appellants contend that the statute interferes with collective bargaining relationships because it does not establish an across the board minimum standard applicable to all employers as was the case in *Metropolitan Life.* Nor does it permit individual employees to bargain with employers on an individual basis concerning the subject matter of the statute, as was the case in *Fort Halifax.* They contend that enforcing the statute in today's world has the effect of making it

more difficult for non-union contractors to bid on public jobs. The state, they contend, is interfering with collective bargaining relationships by weighing in on the side of union as opposed to non-union contractors on public jobs.

We believe that these concerns are adequately addressed by the Supreme Court's recent decision in *Associated Builders*. As in *Associated Builders,* the state here has not endeavored to regulate the bargaining relationship of employers or employees. Rather, the state is enforcing proscribed working conditions on public projects in which the state and local jurisdictions have a proprietary interest. In *Associated Builders,* Massachusetts restricted bidding to union contractors and subcontractors and the Court held the restriction was not preempted. The obstacle to non-union bidding under the Oregon statute cannot possibly be as great as the obstacle imposed in Massachusetts by the requirement that all contractors on the job be signatory to a collective bargaining agreement. Accordingly, we conclude that the Oregon statute is not preempted by federal labor law. Any remedy for the appellants is to be found in the legislature and not in the federal courts.

 The district court also correctly ruled that the Oregon statute is subject to minimum rationality scrutiny for purposes of equal protection analysis. *See Lyng v. UAW,* 485 U.S. 360, 370 n. 8, 108 S.Ct. 1184, 1192 n. 8, 99 L.Ed.2d 380 (1988); *Hoke Co. v. Tennessee Valley Auth.,* 854 F.2d 820, 828 (6th Cir.1988). Oregon has demonstrated a legitimate governmental interest in the regulation of workers' maximum work hours for public projects. The statute therefore survives minimum rationality scrutiny.

The judgment of the district court is **AFFIRMED.**